UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SAVAGE RIVER ENTERPRISES, LLC, and MELISSA WALTHOUR ) ) ) | Case No. 1:25-cv-177 |
| *Plaintiffs*, ) ) | Judge Travis R. McDonough |
| v. ) ) | Magistrate Judge Christopher H. Steger |
| SINCLAIR BROADCASTING GROUP, LLC, and ANNA CAROLINE BARKER, ) ) ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court is Defendants Sinclair Broadcasting Group, LLC's ("SBG") and Anna Caroline Barker's motion to dismiss. (Doc. 9.) For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion (*id.*).

I. BACKGROUND

Plaintiff Savage River Enterprises, LLC ("Savage River") is a Georgia Limited Liability Company that owns and operates Savage River Kennels—a dog boarding and training facility located in Chickamauga, Georgia—which Plaintiffs allege is licensed by the State of Georgia. (Doc. 1-1, at 1.) Plaintiff Melissa Walthour is a resident of Georgia and the manager and trainer at Savage River Kennels. (*Id.*) Plaintiffs allege that, prior to the events at issue, Savage River Kennels had "built a favorable reputation in the community and enjoyed steady profitable business operation" with clients "from across the country." (*Id.* at 3.) Defendant SBG—d/b/a WTVC-TV NewsChannel 9—is a foreign limited liability company organized under the laws of Maryland. (*Id.* at 2.) Defendant Anne Caroline Barker was, at all times relevant to this suit, employed as a news anchor and reporter for NewsChannel 9. (*Id.*)

Steven Schild is a former client of Savage River, and the owner of a female dog named Nala who—at the times relevant to this action—was unspayed and around seven months old. (*Id.* at 9.) Nala boarded at Savage River Kennels for a four-week training program from February 1, 2024, to February 26, 2024. (*Id.*) Plaintiffs claim that Schild signed a contract explicitly accepting the risk of pregnancy for an unspayed dog and waiving liability for sickness while boarding. (*Id.* at 10–11.) Upon Nala's return from Savage River, the Schild family allegedly expressed satisfaction with Nala's training. (*Id.* at 9–10.)

Over a month later, on April 12, 2024, Schild first contacted Walthour, stating Nala was pregnant and demanding a full $2,000 refund. (*Id.* at 10.) Walthour refused the refund. (*Id.* at 11.) In a subsequent call on April 26, 2024, Schild claimed Nala contracted giardia while at Savage River. (*Id.* at 12.) Upon Walthour's final refusal to provide a refund, Schild contacted news outlets, including NewsChannel 9. (*Id.* at 13.)

On or about April 29, 2024, Defendants broadcasted a news segment and published a written article, which Defendants subsequently disseminated across multiple media platforms. (*Id.* at 4.) Plaintiffs allege that Defendants' publications made "numerous false and defamatory statements" about Plaintiffs and placed Walthour in a false light. (*Id.*) The alleged false statements include that Savage River Kennels was unlicensed at the time of the initial publication, and that Nala returned both pregnant and infected with giardia. (*Id.* at 5–8.) In their complaint, Plaintiffs allege that Savage River held an active, valid business license, that Nala showed no signs of being in heat at the time of her boarding, that Nala was healthy when she was released to her family after boarding, and that a subsequent inspection conducted in May 2024 found no evidence of giardia at the kennel. (*Id.* at 5, 13–14.)

Savage River and Walthour initiated this action in the Circuit Court for Hamilton County, Tennessee on April 29, 2025. (*Id.* at 1.) In their complaint, Plaintiffs assert claims for defamation, false light invasion of privacy, and negligent infliction of emotional distress based on Defendants' statements regarding Nala's condition after boarding and the status of Savage River's business license. (*Id.* at 16–19.) Specifically, Plaintiffs claim that Defendants: (1) "[f]ailed to verify the accuracy of their sources;" (2) "[r]elied on unreliable and biased sources without conducting independent verification;" (3) "[i]gnored readily available contradictory information that would have revealed the falsity of their statements;" (4) "[f]ailed to follow standard journalistic practices for fact-checking and verification;" and (5) "[f]ailed to properly train and supervise their employees[.]" (*Id.* at 8.) Plaintiffs allege that, because of these allegedly false statements, they have lost business revenue and customers and suffered personal and professional reputational damage, as well as severe emotional distress. (*Id.*)

On May 30, 2025, SBG removed the action to this Court. (Doc. 1.) In their notice of removal, Defendants assert this Court has diversity jurisdiction because "(A) there is complete diversity of citizenship between Plaintiffs and Defendants and (B) the amount in controversy exceeds $75,000, exclusive of interests and costs[.]" (*Id.* at 3.)

On June 27, 2025, Defendants filed a motion to dismiss Plaintiffs' suit pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. 9, 10.) In support of their motion, Defendants also ask the Court to take judicial notice of several facts, including the five publications that contain allegedly false statements, the kennel licenses and Animal Protection Inspection Reports, and articles concerning the canine gestational period. (*See* Doc. 11, at 7–8;

3

*see also* Docs. 9-1–9-3.)[1] Defendants also reference a separate, parallel lawsuit filed by Plaintiffs against the dog owner, Steven Schild, which is currently pending in the Hamilton County Circuit Court.[2] (*See* Doc. 9, at 1 n.1.) The Defendants' motion (Doc. 9) is now ripe for the Court's review.

II.     STANDARD OF LAW

A plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[1] The Court does take judicial notice of the publications cited in the complaint via hyperlink (*see infra* notes 3–5), however, the Court declines to take notice of other exhibits attached to or referenced in the Defendants' motion to dismiss (*see* Docs. 10, 11).

[2] Defendants cite "*Savage River Enterprises, LLC and Melissa Walthour v. Schild*, No. 24C1117, Hamilton County (Tenn.) Circuit Court" and note that Mr. Schild has filed an anti-SLAPP petition in this matter. (*See* Doc. 9, at 1 n.1.)

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  ANALYSIS

In their complaint., Plaintiffs bring claims under Tennessee common law for defamation, false light invasion of privacy, and negligent infliction of emotional distress, all stemming from five "known publications . . . and writings regarding Plaintiff and her business." (Doc. 1-1, at 4.) Defendants argue that the Court should dismiss Plaintiffs' claims because the statements are either substantially true, are not "of and concerning" Plaintiff Walthour, or are otherwise legally non-actionable. (*See* Docs. 9, 10.)

### A.  Defamation

In Tennessee, to state a claim for defamation, "the plaintiff must [allege] that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or

5

3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Seaton v. TripAdvisor, LLC*, 728 F.3d 592, 596–97 (6th Cir. 2013) (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)). Defendants do not challenge that their alleged statements and writings were published.

### *i.* *Defamatory Meaning and Falsity*

Under Tennessee law, "[t]he basis for an action in defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Battle v. A&E TV Networks, LLC*, 837 F.Supp.2d 767, 770 (M.D. Tenn. 2011) (quoting *Quality Auto Parts Co., Inc. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn.1994)). Whether a statement is capable of defamatory meaning is a matter of law. *See id. at* 772 (citing *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)). However, "whether a statement is true or not is generally a matter for the jury." *Id.* at 775. To determine whether a statement is capable of defamatory meaning, courts consider the statements "within the context in which they are made" and "whether the meaning reasonably conveyed by the published words is reasonably understood in a defamatory sense by the reader or listener." *Id.* at 771, 775 (citations and internal quotations omitted).

Defamation claims cannot be based "upon the expression of an opinion which is based upon disclosed, nondefamatory facts, no matter how derogatory it may be." *Anderson w. Watchtower Bible & Tractor* Soc'y, No. M2004-01066-COA-R9-CV, 2007 WL 161035, at *3 n.21 (Tenn. Ct. App. Jan. 19, 2007) (citation omitted). However, "[t]here is not 'a wholesale defamation exemption for anything that might be labeled opinion.'" *Schuchardt v. Bloomberg L.P.*, 2024 U.S. Dist. LEXIS 46071, at *51 (M.D. Tenn. Mar. 15, 2024) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990)); *see also Jolliff v. N.L.R.B.*, 513 F.3d 600, 611–12 (6th Cir. 2008) (proposing that courts consider at least the following four factors when determining if a

6

statement is an opinion: (1) "common usage or meaning of the allegedly defamatory words;" (2) "the degree to which the statements are verifiable;: (3) "immediate context in which the statement occurs;" and (4) "broader social context into which the statement fits").

Here, after reviewing the contested publications relied on in Plaintiffs' complaint, as alleged, Defendants' published statements claiming that a business is unlicensed and returned animals "sick [and] pregnant" is plainly injurious to the reputation of a dog kennel and its manager and therefore is capable of a defamatory meaning. Although some of these statements may be attributed to Schild's beliefs, the publication titles ("*Pet owner demands refund as puppy returns sick, pregnant from unlicensed Georgia kennel*"[3]) as well as the captions ("*puppy returned from 4 weeks of training at a kennel with a parasite and pregnant with a litter of 7 puppies of her own . . . Savage River Kennels used to have a kennel license but hasn't renewed that license in the last couple years*"[4]), are statements that a reasonable person could interpret as facts presented as the truth, rather than mere non-actionable opinion. *Cf. Seaton v. TripAdvisor, LLC*, No. 3:11-CV-549, 2012 WL 3637394, at *6–7 (E.D. Tenn. Aug. 22, 2012), *aff'd*, 728 F.3d 592 (6th Cir. 2013) (dismissing defamation and false light claims since a reasonable person would interpret an article ranking "2011 Dirtiest Hotels" as opinions).

---

[3] AC Barker, *State: No Violation for Dog that Returned from Kennel Pregnant Despite Previous Complaint*, NEWSCHANNEL 9, https://newschannel9.com/news/local/pet-owner-demands-refund-as-puppy-returns-sick-pregnant-from-illicit-chickamauga-kennel-savage-river-kennels-litter-puppies-giardia-parasite-canine-training-gone-wrong-pet-problems-chickamauga (last updated May 7, 2024); WTVC NEWSCHANNEL 9, *Pet Owner Demands Refund as Puppy Returns Sick, Pregnant from Unlicensed Georgia Kennel*, YOUTUBE, https://www.youtube.com/watch?v=3dfkze3yLWw (last visited Dec. 12, 2025); @newschannelnine, *Pet Owner Demands Refund as Puppy Returns Sick, Pregnant from Unlicensed Georgia Kennel*, YOUTUBE SHORTS, https://www.youtube.com/shorts/PNhTtx23D5s (last visited Dec. 12, 2025).

[4] @newschannelnine, *Pet Owner Demands Refund as Puppy Returns Sick, Pregnant from Unlicensed Georgia Kennel*, YOUTUBE SHORTS, https://www.youtube.com/shorts/PNhTtx23D5s (last visited Dec. 12, 2025).

### ii. "Of and Concerning" Plaintiff Walthour

Additionally, Defendants argue that their statements are not "of and concerning" Walthour. (Doc. 10.) Plaintiffs have sufficiently alleged that the statements at issue are "of and concerning" Walthour. *See Steele v. Ritz*, W200802125COAR3CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009) (citing *You v. Nat'l Enquirer, Inc.*, 550 F. Supp.2d 1179, 1187 (E.D. Cal. 2008) (explaining that defamation claims "based on an alleged statement that does not expressly designate its subject will survive a motion to dismiss only if it is alleged that the statement was made 'of and concerning' the plaintiff or referred to the plaintiff by reasonable implication").

Here, Walthour is identified as the manager and trainer of Savage River Kennels, and the news articles feature a video of her as well as mention her by name.[5] (*See* Doc. 1-1, at 1, 4.) Moreover, given that the statements concern the management and operation of Plaintiffs' facility, a reasonable person could understand the statements to reflect directly upon the professional competence and character of Walthour. Therefore, the complaint sufficiently alleges the statements are "of and concerning" both Plaintiffs.

### iii. Standard of Fault

The standard of fault required depends on whether the Plaintiffs are public figures and whether the subject matter is of public concern. *See West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647–48 (Tenn. 2001) (holding "actual malice is the appropriate standard . . . when the plaintiff is a public official or public figure, or when the claim is asserted by a private

---

[5] AC Barker, *State: No Violation for Dog that Returned from Kennel Pregnant Despite Previous Complaint*, NEWSCHANNEL 9, https://newschannel9.com/news/local/pet-owner-demands-refund-as-puppy-returns-sick-pregnant-from-illicit-chickamauga-kennel-savage-river-kennels-litter-puppies-giardia-parasite-canine-training-gone-wrong-pet-problems-chickamauga (last updated May 7, 2024).

8

individual about a matter of public concern" and adopting "negligence as the standard for defamation claims asserted by private individuals about matters of private concern"). Actual malice requires that Defendants published the statement with knowledge of their falsity or with reckless disregard for the truth. *Id.* at 647. While a defendant's failure to investigate, without more, does not establish a reckless disregard of the truth, the "purposeful avoidance of the truth is in a different category" and may be sufficient to establish actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989); *Perk v. Reader's Digest Ass'n, Inc.*, 931 F.2d 408, 411 (6th Cir. 1991).

At this stage in the litigation, the Court does not need to determine whether the alleged false or defamatory statements are of public concern, because Plaintiffs' complaint alleges facts suggesting reckless disregard of the truth. Assuming the facts alleged are true, Plaintiffs put Defendants on notice that they had a valid business license, and that Nala was not in heat or sick at the time of her boarding at Savage River following the initial publication, and while Defendants updated some of the statements, they did not retract the allegedly false statements regarding Plaintiffs' business license status or that Nala as impregnated at the time of boarding. (*See* Doc. 1-1, at 5–8.) Plaintiffs further allege that they have "held an active Kennel License under Georgia laws at all material times, reflecting an issue date of January 22, 2024," which Plaintiffs allege is publicly available information. (*Id.* at 5.) As such, Plaintiffs have alleged sufficient facts to plausibly suggest that Defendants acted with reckless disregard for the truth. Therefore, Plaintiffs have sufficiently stated a claim for defamation against Defendants.

### B. False Light Invasion of Privacy

To state a claim for false light invasion of privacy, a plaintiff must allege that: (1) "a defendant published a matter concerning the plaintiff"; (2) such publication "plac[ed] the plaintiff before the public in a false light, which is highly offensive to a reasonable person"; and

9

(3) "the defendant had knowledge that his statement was false or acted recklessly with regard to the falsity of the publicized statement."[6] *Clark v. EA Ent. Television, LLC*, 60 F. Supp. 3d 838, 847 (M.D. Tenn. 2014) (internal citation omitted). Defamation claims "often overlap[] with a claim for false light invasion of privacy, but the Tennessee Supreme Court has determined that 'differences between the two torts warrant their separate recognition.'" *Id.* (quoting *West*, 53 S.W.3d at 645). Nevertheless, for both claims, "[c]ourts may determine as a matter of law whether a statement is defamatory or place another in a false light because in each instance the standard is that of the 'reasonable person.'" *Id.* (quoting *Harris v. Gaylord Ent. Co.*, 2013 WL 6762372, at *6 n.3 (Tenn. Ct. App. Dec. 19, 2013).

The Tennessee Supreme Court has clarified that the right to privacy is a personal right, and therefore false light invasion of privacy claims cannot be brought by a corporation or other business entity. *See West*, 53 S.W.3d at 648 (clarifying "the right to privacy is a personal right" and therefore "cannot attach to corporations or other business entities"). Accordingly, Plaintiff Savage River—a limited liability company—cannot maintain a claim for false light invasion of privacy.[7]

For Walthour, the false light claim shares the same elements as the defamation claim regarding publication, offensiveness, and the fault standard. *See Clark*, 60 F. Supp.3d at 847

---

[6] The applicable standard for defamation and false light invasion of privacy depends on whether the claims are asserted by private individuals about private matters or when the claims are asserted by public figures or by private individuals about matters of public concern. *See West*, 53 S.W.3d at 647–48 (holding "actual malice" is the appropriate standard . . . when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern" and adopting "negligence as the standard for defamation claims asserted by private individuals about matters of private concern").

[7] The Defendants make this same point in their motion; however, the Court's reading of Plaintiffs' complaint interprets the claim as pled only as to Walthour. Regardless, in the interest of thoroughness, any false light claim against Defendants by Savage River will be dismissed.

(quoting *West*, 53 S.W.3d at 645). As discussed supra, Walthour has sufficiently pled those elements with particularity to satisfy Rule 8.

Finally, Walthour has sufficiently pled specific facts suggesting that the statements caused injury to her standing in the community and humiliation. *See West*, 53 S.W.3d at 648 (requiring plaintiff show evidence of "injury to standing in the community, humiliation, or emotional distress"). Specifically, Walthour has alleged that she "been the recipient of extreme public hatred," received death threats, and lost prospective employment opportunities, including a "teaching position at an equestrian facility . . . due to concerns over the negative media attention." (Doc. 1-1, at 16, 18.) Consequently, Walthour has sufficiently stated a claim for false light invasion of privacy.

### C. Negligent Infliction of Emotional Distress

The additional elements of a negligent infliction of emotional distress claim "include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 705 (Tenn. Ct. App. 2012) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012)). The Tennessee Supreme Court has consistently held that in addition to the general elements of negligence, the plaintiff must also prove the conduct "caused a serious or severe emotional injury," *Id.* at 705 (citation omitted), by showing "that the conduct giving rise to his claim was so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury." *Lemon v. Williamson Cty. Schs.*, 618 S.W.3d 1, 22 n.15 (Tenn. 2021) (citation and internal quotations omitted).

"At the pleading stage, '[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Walker v. Seyfer*, No. 2:24-CV-00223-DCLC-CRW, 2025 WL 3211223, at *5 (E.D.

Tenn. 2025) (quoting *Lemon*, 618 S.W.3d at 21) (alteration in original). Conduct that "skews more toward 'mere insults, indignities, threats, annoyances, petty oppression or other trivialities'" does not qualify as extreme or outrageous. *Lemon*, 618 S.W.3d at 22 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Walker*, No. 2:24-CV-00223-DCLC-CRW, at *5 (dismissing plaintiff's NIED claim because accusations that plaintiff "steals software for a living" is not outrageous, even if such claims "black-balled" plaintiff from the auto-repair industry); *see also id.* at *14–15 (citing *Lemon*, 618 S.W.3d at 21–22) (explaining that "accusations that plaintiff committed child abuse" and "defendant's efforts to deter the community from associating with the plaintiff did not constitute outrageous conduct").

Here, Walker has alleged that Defendants' published statements caused her to suffer reputational harm as well as physical symptoms of emotional distress. (Doc 1-1, at 19.) However, Walker fails to meet the high bar required to show that the alleged harm goes beyond "mere insults." *See Lemon*, 618 S.W.3d at 21 (citing *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004) (explaining the "high legal standard" required for extreme or outrageous conduct in Tennessee and providing as an example an instance where a man shot his wife, who was having a seizure, in the head, "turned to face the plaintiff, put a pistol to his head, pulled the trigger, and killed himself").

This is true even though Walker has alleged she suffered physical symptoms of emotional distress, as the standard is whether an objective reasonable person would find the conduct extreme or outrageous, rather than a subjective one. *See Brown*, 393 S.W.3d at 706 (dismissing plaintiff's NIED claims despite the fac that plaintiff "experienced severe emotional injury . . . serious enough that he consulted medical professionals" because "the 'reasonable person' component of the emotional injury element ha[d] not been met"). Consequently,

Plaintiff Walthour has not sufficiently stated a claim for negligent infliction of emotional distress.

IV. **CONCLUSION**

For the above reasons, the Defendants' motion to dismiss (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss Plaintiffs' defamation claim is hereby **DENIED**. The motion to dismiss false light invasion of privacy is also **DENIED** as to Walthour but **GRANTED** to the extent Plaintiffs sought to allege a false light invasion of privacy claim on behalf SBG. The motion to dismiss Plaintiffs' negligent infliction of emotional distress claim is also **GRANTED**.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**